1

2

3

4                        UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6                             SAN JOSE DIVISION

7

8    D.S.,                                    Case No.  24-cv-03002-VKD

                    Plaintiff,
9
                                              **ORDER RE SOCIAL SECURITY**
10        v.                                  **APPEAL**

11   FRANK BISIGNANO,                         Re: Dkt. Nos. 19, 20, 21, 22

                    Defendant.
12

13

14         This is the second appeal filed by plaintiff D.S.[1] challenging a final decision of the

15   Commissioner of Social Security ("Commissioner")[2] denying her January 8, 2019 applications for

16   disability insurance benefits ("Title II") and supplemental security income ("Title XVI") under

17   Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423, 1381, *et seq*.  The present

18   appeal follows administrative proceedings conducted after Magistrate Judge Kandis Westmore

19   remanded this matter, in a September 7, 2022 order, for further development of the record.  *See*

20   AR[3] 653-662 (Case No. 4:21-cv-03560-KAW, Dkt. No. 26).

21         D.S. contends that in reaching her January 25, 2024 post-remand decision, the

22   administrative law judge ("ALJ") not only failed to adequately develop the record, but also erred

23

24   _____

     [1] Because orders of the Court are more widely available than other filings, and this order contains
25   potentially sensitive medical information, this order refers to the plaintiff only by her initials.  This
     order does not alter the degree of public access to other filings in this action provided by Rule
26   5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).

27   [2] Frank Bisignano, the Commissioner of the Social Security Administration, is substituted for his
     predecessor pursuant to Federal Rule of Civil Procedure 25(d).

28   [3] "AR" refers to the certified administrative record filed with the Court.  Dkt. No. 8.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  in her assessment of the existing record evidence.  The Commissioner maintains that the ALJ

2  properly evaluated the evidence and that substantial evidence supports her finding that D.S. was

3  not disabled prior to February 11, 2021.

4      The parties have filed their respective briefs.[4]  Dkt. Nos. 20-22.  The matter was submitted

5  without oral argument.  Civil L.R. 16-5.  Upon consideration of the moving and responding papers

6  and the relevant evidence of record, for the reasons set forth below, the Court reverses the

7  Commissioner's decision and remands this case for further administrative proceedings consistent

8  with this order.[5]

9  **I.       BACKGROUND**

10     **A.       Pre-Remand Proceedings**

11     D.S. was 55 years old on January 8, 2019, the date she applied for the Title II and Title

12  XVI benefits in question.  *See* AR 81, 82, 583.  The record indicates that she completed the tenth

13  grade in high school.  Her past relevant work includes work as a jewelry maker.  *See* AR 32, 51,

14  590, 806.

15     In her applications for benefits, D.S. alleged disability beginning on May 1, 2015 due to

16  neck injury, back injury, a herniated disc, a bone spur in her foot, arthritis, high blood pressure,

17  post-traumatic stress disorder ("PTSD"), anxiety, and insomnia.  *See* AR 56, 73, 194.  Her

18  applications were denied initially and on review.  AR 81, 82, 103, 104.  An ALJ held a hearing on

19  June 30, 2020 (AR 27-54) and subsequently issued a decision on September 3, 2020, finding that

20  D.S. is not disabled (AR 13-22).

21     The Appeals Council denied D.S.'s request for review of the ALJ's decision.  AR 1-5.  On

22  May 12, 2021, D.S. filed an appeal in this Court, seeking judicial review, arguing that the

---

[4] After granting two extensions of time for D.S. to file her opening brief, the Court granted a third and final extension of that deadline to December 13, 2024.  *See* Dkt. Nos. 14, 16, 18.  On December 13, 2024, D.S. filed an ex parte motion for a further extension to December 16, 2024 to file her opening brief. Dkt. No. 19.  As the Commissioner has not opposed D.S.'s requested fourth extension, and the parties proceeded to fully brief the matter thereafter, D.S.'s fourth requested extension is granted.

[5] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 7, 10.

1    Commissioner's decision should be reversed on the grounds that the ALJ (1) failed to adequately

2    develop the record regarding D.S.'s mental and physical impairments for purposes of her Title II

3    claim; (2) erred in assessing D.S.'s physical impairments at step two of the disability analysis;

4    (3) did not properly evaluate medical opinions; (4) improperly rejected D.S.'s symptom testimony;

5    (5) erred in determining D.S.'s residual functional capacity ("RFC"), and (6) erred at step five of

6    the disability analysis, in that the testimony of the vocational expert ("VE") was based on an

7    incomplete RFC hypothetical.  *See* AR 698.

8         D.S.'s appeal was assigned to Judge Westmore, who ruled in D.S.'s favor,[6] finding that the

9    ALJ failed to adequately develop the record regarding D.S.'s physical and mental impairments for

10   purposes of her Title II claim, during the relevant period from D.S.'s alleged onset date of May 1,

11   2015 through December 31, 2016, her date last insured.  Additionally, Judge Westmore

12   determined that the ALJ compounded the record development error by rejecting all medical

13   opinions[7] and independently assessing the severity and functional limitations associated with

14   D.S.'s physical and mental impairments based on the ALJ's own interpretation of the evidence.

15   *See* AR 660-661.  Judge Westmore further found that the ALJ's record development error

16   extended to D.S.'s Title XVI claim.  *See* AR 661.  Judge Westmore declined to reach the

17   additional issues raised by D.S. and remanded the case for further development of the record as

18   follows:

19              For these reasons, remand is required for the ALJ to further
              develop the record regarding Plaintiff's mental and physical
20            impairments prior to adjudicating Plaintiff's Title II and Title XVI
              claims.  The Court recognizes that the ALJ may discharge this duty
21            in several ways and defers to the ALJ to determine the appropriate
              method with the following exception.  *See Tonapetyan*, 242 F.3d at
22            1150.  On remand, the ALJ should order a psychiatric consultative
              examination and obtain a medical opinion regarding the extent of
23            Plaintiff's pre-DLI [date last insured] mental impairments.  *See id.*

24   _____

25   [6] There is no indication that Judge Westmore's order was challenged on appeal, and the time for
     any such challenge has passed.  *See* 42 U.S.C. § 405(g); *see also* 28 U.S.C. § 2107.

26   [7] While acknowledging that what were previously termed "medical opinions" from state agency
27   medical and psychological consultants are now referred to as "prior administrative medical
     findings," Judge Westmore referred to all medical opinions, including prior administrative medical
28   findings, as "opinions."  *See* AR 656 n.2.  For consistency, this order does the same.

United States District Court
Northern District of California

AR 661-662.  Additionally, Judge Westmore ordered the ALJ to clarify whether D.S.'s cervical and lumbar conditions satisfied the one-year durational requirement for disability.  AR 662 at n.4.

Meanwhile, on April 13, 2021, D.S. filed another claim for Title XVI benefits, alleging inability to work due to "Neck Injury; Herniated disc; Back Injury Cortisone Injections 04/27/2021; Bone Spur in right heel; Arthritis; High Blood Pressure; PTSD; Anxiety; Insomnia; Nerve damage upper left side of face."  *See* AR 707, 805.  That claim was granted upon initial review on July 14, 2021.  D.S. was found disabled as of April 13, 2021.  *See* AR 707, 728-729.

### B.    Post-Remand Proceedings

Upon remand, the Appeals Council issued an order stating that it "neither affirms nor reopens the determination [that D.S. is disabled as of April 13, 2021], which continues to be binding."  AR 669.  The Appeals Council further noted:

> This means the determination will be subject to reopening and revision if additional development indicates the conditions for reopening are met (20 CFR 416.1487).  Unless the determination is reopened and revised in accordance with applicable regulations, the period before the Administrative Law Judge will be limited to that period prior to April 13, 2021.

*Id*.  The Appeals Council vacated the ALJ's September 3, 2020 decision and remanded the matter "to an [ALJ] for further proceedings consistent with [Judge Westmore's September 7, 2022 order]."  *Id*.

The ALJ did not reopen the determination that D.S. is disabled as of April 13, 2021. AR 560.  Accordingly, the period at issue on remand was D.S.'s May 1, 2015 alleged onset date through April 12, 2021.  *Id*.

On June 20, 2023, the ALJ held a hearing, at which a VE and a medical expert ("ME") testified.  AR 583-649.  On January 25, 2024, the ALJ issued a decision concluding that D.S. became disabled beginning on February 11, 2021, but was not disabled prior to February 11, 2021, and was not disabled within the meaning of the Act at any time through D.S.'s December 31, 2016 date last insured.[8]  AR 559-574.

_____

[8] The relevant period to establish disability for Title XVI claims begins with the date of D.S.'s application—here, January 8, 2019—and such benefits are available beginning one month after the

1    The ALJ found that D.S. meets the insured status requirements of the Act through

2    December 31, 2016 and that she has not engaged in substantial gainful activity since the May 1,

3    2015 alleged onset date.  AR 563.  The ALJ further found that since the alleged onset date of May

4    1, 2015, D.S. has had the following severe impairments:  polysubstance abuse, anxiety disorder,

5    depressive disorder, and PTSD.  *Id.*  The ALJ further found that beginning with the established

6    onset date of disability, February 11, 2021, D.S. has had the following severe impairments:

7    polysubstance abuse, anxiety disorder, depressive disorder, PTSD, and degenerative disc disease

8    of the spine.  *Id.*  However, the ALJ determined that since May 1, 2015, D.S. has not had an

9    impairment or combination of impairments that meets or medically equals the severity of one of

10   the impairments listed in the Commissioner's regulations.  AR 565.

11   The ALJ found that prior to the established onset of disability on February 11, 2021, D.S.

12   had the RFC "to perform a full range of work at all exertional levels but with the following

13   nonexertional limitations: the claimant can perform simple, routine tasks.  The claimant can have

14   no more than occasional interaction with the general public, coworkers, and supervisors."

15   AR 566.  The ALJ determined that beginning on the February 11, 2021 established date of

16   disability, D.S. has had the RFC to perform light work, "except the claimant can perform simple,

17   routine tasks.  The claimant can have no more than occasional interaction with the general public,

18   coworkers, and supervisors.  The claimant will be off task 15% of the workday."  AR 570.

19   The ALJ found that since May 1, 2015, D.S. has been unable to perform any past relevant

20   work.  AR 571.  The ALJ further noted that by the established onset of disability on February 11,

21   2021, D.S.'s age category changed to that of a person of advanced age.  AR 572.

22   The ALJ found that prior to February 11, 2021, transferability of job skills is not material

23   to the disability determination, and that beginning on February 11, 2021, D.S. has not been able to

24   transfer job skills to other occupations.  AR 572.

25   _____

26   claimant filed her application, i.e., February 8, 2019.  *See* 20 C.F.R. §§ 416.202, 416.305,
     416.330, 416.335, 416.501.  To be entitled to Title II benefits, D.S. is required to establish

27   disability on or before her date last insured, December 31, 2016.  *See Burch v. Barnhart*, 400 F.3d
     676, 679 (9th Cir. 2005).  Accordingly, the relevant period for D.S.'s Title II claim is the alleged

28   onset date of May 1, 2015 to her date last insured, December 31, 2016.

The ALJ concluded that prior to February 11, 2021, and based on her age, education, work experience, and RFC, D.S. could perform other jobs that exist in significant numbers in the national economy, such as floor waxer and hand packager.  AR 572-573.  However, the ALJ determined that as of February 11, 2021, and based on D.S.'s age, education, work experience, and RFC, there are no jobs that exist in significant numbers in the national economy that D.S. can perform.  AR 573.  Accordingly, the ALJ concluded that D.S. became disabled on February 11, 2021 and continued to be disabled through the date of the ALJ's decision.  Additionally, the ALJ determined that D.S. was not disabled prior to February 11, 2021 or at any time through her December 31, 2016 date last insured.  AR 573-574.

D.S. filed the present action on May 18, 2024, seeking judicial review of the ALJ's January 25, 2024 decision.[9]

## II.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits.  The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (citation omitted); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citation omitted).  In this context, the term "substantial evidence" means "more than a mere scintilla" but "less than a preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) and *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012), *superseded by regulation on other grounds*); *see also Morgan*, 169 F.3d at 599 (citation omitted).  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Ahearn*,

---

[9] D.S. states (and the Commissioner does not dispute) that she timely filed the present action, seeking judicial review of the January 25, 2024 decision, after the expiration of the period for the Appeals Council to assume jurisdiction.  *See* Dkt. No. 20 at ECF 7; Dkt. No. 21 at ECF 3; *see also* 20 C.F.R. §§ 404.981, 404.982, 416.1481, 416.1482.

United States District Court
Northern District of California

988 F.3d at 1115 (citation omitted); *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Ahearn*, 988 F.3d at 1115-16 (citation omitted); *Morgan*, 169 F.3d at 599 (citation omitted).

Given the prior appeal before Judge Westmore, the Court views the issues on the present appeal "through the lens of [the] law of the case" doctrine when appropriate. *R.K.T. v. Kijakazi*, No. 20- cv-03101-JCS, 2022 WL 976979, at *5 (N.D. Cal. Mar. 31, 2022) (citing *Hammond v. Berryhill*, 688 F. App'x 486 (9th Cir. 2017)); *see also Merritt v. Mackey*, 932 F.2d 1317, 1320-21 (9th Cir. 1991) (citations omitted) (law of the case doctrine is not applied when the evidence is "substantially different" or the controlling law has changed).

## III.    DISCUSSION

D.S. seeks reversal of the January 25, 2024 decision on largely the same grounds as her prior appeal, arguing that the ALJ (1) breached her duty to adequately develop the record on remand, and did not comply with Judge Westmore's September 7, 2022 order; (2) made legally improper "bulk citations" to the administrative record; (3) erred at step two of the disability analysis with regard to D.S.'s spinal impairments and right ankle bone spur; (4) improperly discounted D.S.'s statements and testimony regarding her symptoms; and (5) did not properly assess the opinion evidence. The Commissioner maintains that the ALJ properly evaluated the evidence and that substantial evidence supports her decision that D.S. was not disabled prior to February 11, 2021.

### A.    Development of the Record

D.S. argues that the ALJ failed to comply with Judge Westmore's order for further development of the record, and again proceeded to independently assess the severity and functional limitations of D.S.'s impairments after rejecting the medical opinions. Dkt. No. 20 at ECF 15-18; Dkt. No. 22 at ECF 8-13. The Commissioner argues that the ALJ reasonably developed the record by obtaining the testimony of an ME. Dkt. No. 21 at ECF 4-5. For the reasons discussed below, the Court agrees with D.S.

In her September 7, 2022 order, Judge Westmore discussed at length why she found the

United States District Court
Northern District of California

1    record on D.S.'s prior appeal inadequate and required the ALJ to further develop the record

2    "regarding Plaintiff's mental and physical impairments prior to adjudicating Plaintiff's Title II and

3    Title XVI claims" (AR 661).  The prior record contained five medical opinions, all by consulting

4    clinicians:  two state agency physicians (Steven Kao, M.D. and Patty Rowley, M.D.), who

5    reviewed D.S.'s records; two state agency psychologists (Phaedra Caruso-Rudin, Psy.D. and

6    Heather M. Abrahimi, Psy.D.), who reviewed D.S.'s records; and an orthopedic consultant,

7    Soheila Benrazavi, M.D., who examined D.S.  Relevant to the discussion below, Judge Westmore

8    noted that (1) most of D.S.'s medical evidence concerned treatment that post-dated her date last

9    insured; (2) "four out of five of the state agency clinicians, including the two psychologists and

10   two of the three physicians, found that there was insufficient evidence to render a medical opinion

11   regarding [D.S.]'s impairments for purposes of her Title II claim, thus limiting their medical

12   opinions to [D.S.]'s Title XVI claim"; and (3) "[t]he ALJ ultimately rejected all five of the

13   consulting medical opinions regarding [D.S.]'s mental and physical impairments as 'not

14   persuasive,' including those from the four clinicians who limited their opinions to [D.S.]'s Title

15   XVI claim."  *See* AR 655-661.  In sum, Judge Westmore found that the ALJ had no medical

16   opinions regarding D.S.'s physical or mental impairments with respect to D.S.'s Title II claim.

17   AR 657.  Judge Westmore further found that the "[t]he ALJ compounded the record development

18   error by then independently assessing how [D.S.]'s mental and physical impairments impacted her

19   ability to work during the Title II period."  AR 660.  Judge Westmore found that the ALJ's

20   "rejection of all of the medical opinions rendered the record 'inadequate' or 'ambiguous'

21   regarding [D.S.]'s Title XVI claim as well."  AR 661.

22         With respect to her physical impairments, D.S. states that on remand, the ALJ did nothing

23   to develop the record with respect to her Title II claim.  Additionally, D.S. notes that the ALJ once

24   again proceeded to adjudicate her Title II and Title XVI claims, after rejecting as unpersuasive all

25   medical opinions regarding D.S.'s physical impairments, including the prior opinions by Drs. Kao,

26   Rowley, and Benrazavi, as well as an additional May 28, 2021 Physical Medical Source Statement

27   by one of D.S.'s physicians, Alaina Fields, M.D.  *See* AR 564-565, 571.  The Commissioner does

28   not refute D.S.'s arguments on this issue.  Nor does the Commissioner point to any evidence to the

contrary.  Indeed, the Commissioner does not address D.S.'s arguments regarding development of the record as to her physical impairments at all.  Judge Westmore clearly found the prior record inadequate and ordered the ALJ to develop the record regarding D.S.'s "mental and physical impairments prior to adjudicating Plaintiff's Title II and Title XVI claims."  AR 661.  It therefore appears that the ALJ failed to comply with Judge Westmore's order with respect to D.S.'s physical impairments.

With respect to D.S.'s mental impairments, Judge Westmore expressed particular concern about the need to develop the record.  *See* AR 659.  In remanding the matter, she "recogniz[ed] that the ALJ may discharge this duty in several ways and defer[red] to the ALJ to determine the appropriate method[.]"  AR 661-662.  However, she expressly conditioned that deference on "***the following exception***":  "On remand, the ALJ should order a psychiatric consultative examination and obtain a medical opinion regarding the extent of Plaintiff's pre-DLI [date last insured] mental impairments."  AR 662 (emphasis added).

On remand, the ALJ obtained testimony from an ME, who reviewed D.S.'s records and offered her opinion at the June 20, 2023 hearing.  *See* AR 619-640.  The ALJ declined to obtain a psychiatric consultative examination, despite Judge Westmore's order and D.S.'s requests for the same.  *See* AR 936, 937.  The ALJ explained that "the District Court did not mandate that a consultative examination be obtained and rather indicated that a consultative examiner 'should' be obtained."  AR 559.  The Commissioner maintains that position on appeal.  *See* Dkt. No 21 at ECF 4.

The ALJ and the Commissioner disregard the context of Judge Westmore's order, which did not merely request or suggest, but clearly required, a psychiatric consultative examination on remand.  *See* AR 662.  While the Commissioner argues that the ALJ reasonably developed the record by obtaining the ME's testimony, Judge Westmore ordered the ALJ to obtain *both* a psychiatric consultative examination *and* a medical opinion regarding the extent of D.S.'s pre-DLI mental impairments.  Although the Commissioner contends that a consultative examination would have no bearing on the period before D.S.'s December 31, 2016 date last insured, Judge Westmore already considered and rejected that argument in remanding the matter for further development of

United States District Court
Northern District of California

1  the record.  *See* AR 659-660.  This Court finds no basis to revisit that ruling on this appeal.[10]

2  As the ALJ failed to comply with Judge Westmore's order to develop the record, remand is

3  required.  While the Court addresses some additional issues below,[11] the Court otherwise declines

4  to address other issues raised by D.S. that may be impacted by further development of the record

5  on remand.

6      **B.**    **Step Two Analysis**

7  D.S. argues that at step two of the sequential disability analysis, the ALJ erred in finding

8  that D.S.'s plantar bone spur, cervical spine, and lumbar spine impairments are not severe.  Dkt.

9  No. 20 at ECF 19-21; Dkt. No. 22 at ECF 13-15.  The Commissioner contends that the ALJ's step

10  two assessment is proper and supported by substantial evidence.  Dkt. No. 21 at ECF 6-7.

11  At step two of the five-step sequential analysis, the ALJ must assess the medical severity

12  of a claimant's impairments.  20 C.F.R. § 404.1520(a)(4)(ii);[12] *Webb v. Barnhart*, 433 F.3d 683,

13  686 (9th Cir. 2005).  "[T]he step-two inquiry is a de minimis screening device to dispose of

14  groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  A severe impairment

15  "must be established by objective medical evidence from an acceptable medical source."  20

16  C.F.R. § 404.1521.  The claimant bears the burden of showing that he has a medically severe

17  impairment or combination of impairments.  *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.

18  1999) (stating that "[t]he burden of proof is on the claimant as to steps one to four" of the

19  sequential analysis).

---

[10] The ALJ also stated that she did not obtain a psychiatric consultative examination because such an examination "could cause a reopening of" the determination of D.S.'s 2021 Title XVI claim that D.S. was disabled as of April 13, 2021, noting that D.S.'s representative (who apparently is not an attorney) "did not want to disturb the new Title XVI determination."  *See* AR 559, 601, 647-648.  D.S. suggests that the ALJ threatened to re-open D.S.'s 2021 Title XVI disability determination if D.S. insisted on a psychiatric consultative examination.  *See* Dkt. No. 20 at ECF 9.  The Court sees no need to address or belabor that point, as the ALJ's noncompliance with Judge Westmore's order is dispositive of the record development issue.

[11] The Court has considered D.S.'s arguments regarding "bulk citations" as necessary below, but otherwise finds it unnecessary to separately address those issues.

[12] Because the regulations regarding Title II and Title XVI claims are nearly identical, for simplicity this order cites only to the regulations pertaining to Title II claims.

An impairment or combination of impairments is considered "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "Basic work activities are abilities and aptitudes necessary to do most jobs," *Smolen*, 80 F.3d at 1290, including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting," SSR 85-28, 1985 WL 56856 at *3. "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen*, 80 F.3d at 1290 (citing SSR 85-28); *see also Webb*, 433 F.3d at 686 (same).

D.S. argues that the ALJ erred in finding that her bone spur is not severe based on a lack of evidence that D.S. was entirely prevented from walking or could not walk without an assistive device. D.S. maintains that the ALJ applied an impermissibly high standard that is inconsistent with the "de minimis" nature of the step two analysis. *See* Dkt. No. 20 at ECF 20; Dkt. No. 22 at ECF 13-14. Based on the current record, the Court finds no error with the ALJ's assessment, so far as it goes. The ALJ did not, as D.S. contends, appear to presume or find that D.S. must be entirely unable to walk in order to support a step two finding of severity. Rather, the ALJ's decision indicates that she noted records documenting the existence of D.S.'s bone spur, and cited specific records over a span of several years tending to show that the bone spur did not significantly limit D.S.'s abilities to perform basic work activities. *See* AR 564 (citing AR 317-318, 401-402, 448, 1095, 1096, 1102, 1112). Although D.S. asserts that there are "multiple treatment notes [that] endorse [D.S.'s] statements that her bone spur limited her ability to stand and walk" (Dkt. No. 20 at ECF 20), D.S. cites no such records.

D.S. argues that the ALJ also erred at step two with respect to her spine impairments. *See* Dkt. No. 20 at ECF 20-21. The ALJ stated that she "considered [D.S.'s] alleged symptoms of neck pain, shoulder pain, back pain hip pain, neck injury, and arthritis." AR 564. The ALJ found that "[t]here were no medical signs or laboratory findings to substantiate the existence of a

1    medically determinable impairment (with the exception of dysfunction of the spine, which is

2    established as of February 11, 2021 as discussed below)." *Id*. The ALJ thus found "a lack of

3    objective evidence to substantiate the existence of a medically determinable impairment." *Id*.

4    D.S. argues that the ALJ erred by failing to consider evidence documenting the existence of

5    cervical (not just lumbar) spine issues. D.S. also contends that the ALJ's statement regarding a

6    "lack of objective evidence" regarding the "existence of a medically determinable impairment" is

7    contradicted by imaging records documenting the existence of cervical and lumbar issues in 2015,

8    2016, 2017,[13] and 2021. *See* Dkt. No. 22 at ECF 14 (citing AR 294, 325, 976).

9          The ALJ's findings on this issue are unclear. On the one hand, "[t]he mere existence of an

10   impairment is insufficient proof of a disability," *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir.

11   1993), and a severe impairment "must be established by objective medical evidence from an

12   acceptable medical source," 20 C.F.R. § 404.1521. Simply pointing to documentation of the

13   existence of an impairment does not establish any particular functional limitations. However, D.S.

14   points to evidence of cervical and/or lumbar issues from records dating from 2015. It is therefore

15   unclear why the ALJ apparently found "no medical signs or laboratory findings to substantiate the

16   existence of a medically determinable impairment" at any time prior to February 11, 2021. AR

17   564. The ALJ did not sufficiently explain this step two finding, and the Commissioner does not

18   address it. Accordingly, the Court cannot properly assess this issue, given the state of the briefing

19   and record on this appeal. On remand, the ALJ should consider the issues and arguments D.S.

20   raises.

21         **C.    D.S.'s Symptom Testimony**

22         D.S. argues that the ALJ erred by not being sufficiently specific about which part(s) of her

23   testimony the ALJ rejected and on what basis. *See* Dkt. No. 20 at ECF 29-31; Dkt. No. 22 at ECF

24   15-17. The Commissioner argues that the ALJ reasonably found that D.S.'s subjective complaints

25   are unreliable. *See* Dkt. No. 21 at ECF 10-12.

26

27   [13] D.S.'s citation to record evidence, includes a duplicate reference to AR "325" for a purported
     "September 18, 2017 x-ray." *See* Dkt. No. 22 at ECF 14. It is unclear what record D.S. intended

28   to cite here.

*(left margin)* United States District Court
Northern District of California

United States District Court
Northern District of California

Unless an ALJ finds that the claimant is malingering, when an ALJ determines that a claimant has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); *see also Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "This requires the ALJ to 'specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony.'" *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler*, 775 F.3d at 1102).

In her decision, the ALJ noted D.S.'s allegations that "she was unable to work because of, in part, PTSD and anxiety"; "she had a bad day every four to five days per week, where she would be 'down' for the day"; "after an assault, she would lock her house all of the time because she was afraid"; "she was uncomfortable around men"; her impairments caused difficulties performing daily activities"; "she obtained help for alcohol consumption in 2016 and 2017"; "as of 2018 alcohol was no longer a problem"; "she uses cannabis to help with sleep"; and "she received mental health treatment and psychiatric medication." AR 567. In routine boilerplate language, the ALJ then stated that while D.S.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported prior to February 11, 2021." *Id.* The ALJ further stated that D.S.'s "statements about the intensity, persistence, and limiting effects of her symptoms, . . . are inconsistent with the overall evidence of record, which shows that the claimant was not as limited as alleged." *Id.* These routine boilerplate statements "did not identify what parts of [D.S.'s] testimony were not credible and why." *Lambert*, 980 at 1277 (quotations and citation omitted). While the ALJ provided a fairly long summary of D.S.'s medical records, she did not explain why any particular evidence was inconsistent with D.S.'s subjective symptom testimony. *See Ferguson v. O'Malley*, 95 F.4th 1194, 1200-1201 (9th Cir. 2024) (ALJ must "explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony"); *see also Lambert*, 980 at 1278 (quoting *Brown-Hunter*, 806 F.3d at 484) ("Although

1   the ALJ did provide a relatively detailed overview of Lambert's medical history, 'providing a

2   summary of medical evidence . . . is not the same as providing clear and convincing reasons for

3   finding the claimant's symptom testimony not credible.'").

4           Accordingly, the ALJ erred by failing to provide sufficiently specific, clear and convincing

5   reasons, supported by substantial evidence, explaining what part(s) of D.S.'s testimony she found

6   not credible and why.  Under these circumstances, the Court cannot meaningfully review the

7   ALJ's decision to "ensure that [D.S.]'s testimony was not arbitrarily discredited."  *Brown-Hunter*,

8   806 F.3d at 494; *see also id*. ("We cannot review whether the ALJ provided specific, clear, and

9   convincing reasons for rejecting Brown-Hunter's pain testimony where, as here, the ALJ never

10  identified *which* testimony she found not credible, and never explained *which* evidence

11  contradicted that testimony.").

12          **D.      Opinion Evidence**

13          D.S. argues that the ALJ did not give sufficient reasons, supported by substantial evidence,

14  for rejecting the opinions of the five state agency consulting clinicians, and for partially rejecting

15  the opinion of the ME, Linda Miller, M.D.[14]  *See* Dkt. No. 20 at ECF 21-29; Dkt. No. 22 at ECF

16  15.  The Commissioner argues that the ALJ reasonably evaluated each of the opinions at issue in

17  determining D.S.'s RFC.  *See* Dkt. No. 21 at ECF 7.  With respect to the opinions in question, the

18  Court addresses the alleged shortcomings of the ALJ's assessment, so far as it goes.  However,

19  assessment of the opinion evidence will necessarily depend on further development of the record

20  on remand.

21          Under the regulations that apply to D.S.'s applications, the Commissioner does not give

22  specific evidentiary weight to medical opinions, including the deference formerly given to the

23  opinions of treating physicians.  Instead, the Commissioner evaluates the "persuasiveness" of all

24  medical opinions in the record based on: (1) supportability; (2) consistency; (3) relationship with

25

26  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

27  [14] Other than to note that the ALJ rejected the only other medical opinion by Alaina Fields, M.D. regarding D.S.'s physical impairments (*see* Dkt. No. 22 at ECF 9), D.S. does not challenge the ALJ's rejection of Dr. Fields's opinion.  *See* AR 571, 1078-1081.  D.S. also does not challenge the

28  ALJ's rejection of the opinion offered by D.S.'s physician, Stephen Vance, M.D. regarding D.S.'s mental residual functional capacity.  *See* AR 571, 964-969.

United States District Court
Northern District of California

United States District Court
Northern District of California

the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c; *see also Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022) ("For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies."). An ALJ's decision "including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

Supportability and consistency are considered the most important factors, and the ALJ is required to explicitly address them in his or her decision. 20 C.F.R. § 404.1520c(b)(2). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ "may, but [is] not required to," explain how he or she considered the remaining three factors listed in the regulations. *Id*. § 404.1520c(b)(2).

### 1.    Drs. Caruso-Rudin and Abrahimi

Phaedra Caruso-Rudin, Psy.D. is a state agency consultant who conducted an initial review of D.S.'s Title II and Title XVI claims. Heather Abrahimi, Psy.D., is a state agency consultant who reviewed D.S.'s Title II and Title XVI claims on reconsideration. Both Drs. Caruso-Rudin and Abrahimi found the record evidence insufficient to assess D.S.'s mental impairments for

purposes of her Title II claim.  *See* AR 77, 99-100.  With respect to her Title XVI claim, both psychologists concluded that D.S.'s mental impairments were not severe.  Dr. Caruso-Rudin opined that D.S. had mild impairment in concentration, persistence, and pace, but was not impaired in the other areas of mental functioning described in regulations, known as the "paragraph B" criteria (i.e., understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself).  *See* AR 63, 77; *see also* 20 C.F.R. § 404.1520a (describing process for evaluating mental impairments).  Dr. Abrahimi assessed mild impairment in concentration, persistence, and pace and in the ability to interact with others, while finding that D.S. was unlimited in the other paragraph B criteria.  *See* AR 88-89.

With respect to D.S.'s Title II claim, the ALJ was "not persuaded" by the opinions of Drs. Caruso-Rudin and Abrahimi that the record evidence is insufficient to assess D.S.'s mental impairments.  AR 569.  She explained that "[s]uch opinions are supported by a limited narrative and did not consider the entirety of the record."  *Id.*  "In particular," the ALJ noted that "such opinions are inconsistent with the claimant's treatment for psychiatric symptoms in 2015."  *Id.* (citing AR 1095).  The ALJ further stated that the "opinions are also inconsistent with the claimant's emergency room treatment for psychiatric impairments."  *Id.* (citing AR 292, 295).  The Commissioner maintains that the ALJ reasonably assessed these opinions based on limited supportability, as well as inconsistency with the broader record.  *See* Dkt. No. 21 at ECF 8.  On the whole, the Court finds that the ALJ did not meaningfully engage with the opinions of Dr. Caruso-Rudin or Dr. Abrahimi.  *See Labryssa v. Kijakazi*, No. 21-cv-04233-BLF, 2022 WL 2833981, at *7 (N.D. Cal. July 30, 2022) (ALJ must engage with medical opinion in a "meaningful sense.").  Additionally, D.S. persuasively argues that the ALJ's reason for rejecting these opinions is not supported by substantial evidence.  Indeed, the cited records include a single page from an October 1, 2015 emergency room record noting that D.S. sought help for alcoholism, with a brief reference to "mood disorder . . . probably secondary to with agitation anxiety and/or alcohol" and a note indicating that D.S. was "offered patient alcohol treatment program."  AR 1095.  The remaining cited records of "treatment for psychiatric impairments" are part of an

August 12, 2015 emergency room record in which D.S. sought treatment for injuries after reporting that she "tripped and fell hitting her left forehead and shoulder." *See* AR 291-295. It is not readily apparent why these scant records constitute evidence inconsistent with Dr. Caruso-Rudin's and Dr. Abrahimi's determination that the record was insufficient to assess D.S.'s mental impairments, including PTSD.

With respect to D.S.'s Title XVI claim, the ALJ was "partially persuaded" by the opinions of Drs. Caruso-Rudin and Abrahimi to the extent that both psychologists found the evidence "sufficient to establish mental medically determinable impairments during the Title XVI period." AR 569-570. The ALJ explained that "[s]uch opinions are supported by reviews of the record and narratives." AR 570 (citing AR 55-80, 83-93). However, the ALJ was "not persuaded" by the psychologists' respective opinions that D.S.'s mental impairments were not severe. Here, the ALJ explained that she found that "the evidence establishes severe mental impairments." AR 570 (citing AR 282, 295, 401-402, 451-503, 504-549, 970-1077, 1095). While the ALJ's ultimate assessment of these opinions appears to favor D.S., D.S. nonetheless argues that the ALJ's evaluation of the evidence is flawed.

To the extent D.S. seems to suggest that the ALJ was required to conduct a comparative weighing of Drs. Caruso-Rudin's and Abrahimi's respective medical opinions (*see* Dkt. No. 20 at ECF 24-25), she has not persuasively argued why such an analysis is required by the Commissioner's regulations. However, as above, the Court finds that the ALJ did not meaningfully engage with the opinion of Dr. Caruso-Rudin or Dr. Abrahimi or sufficiently explain what portions of their assessment (namely, their paragraph B analysis) she found not persuasive. Additionally, the Court agrees that the ALJ's citation to broad sections of the record, totaling hundreds of pages, are not sufficiently specific for the court to reasonably assess the ALJ's determinations and determine whether they are supported by substantial evidence. *Cf. Molina*, 674 F.3d at 1121 ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.") (cleaned up).

### 2. Dr. Miller

Linda Miller, M.D. is the ME who reviewed D.S.'s records and testified at the June 20,

2023 hearing to offer her opinions. *See* AR 619-640. Dr. Miller noted alcohol and cannabis use, but stated that she did not find any medically determinable impairments that met or equaled the severity of one of the impairments listed in the Commissioner's regulations. Dr. Miller additionally opined that there was no evidence that D.S. had any limitations under the paragraph B criteria. *See* AR 620, 624-625, 627. The ALJ was "persuaded by Dr. Miller's opinion inasmuch as it establishes mental medically determinable impairments throughout the period at issue and is supported by Dr. Miller's examination of the record, testimony, education, and experience." AR 570. However, the ALJ was "not persuaded" by Dr. Miller's opinion, explaining that Dr. Miller found D.S. to be "less limited than the evidence indicates." *Id.* Here, the ALJ stated that "Dr. Miller's opinion is inconsistent with repeated abnormal psychiatric presentation by the claimant and the psychiatric treatment provided throughout the period at issue," citing to the same records she cited in her assessment of Dr. Caruso-Rudin's and Dr. Abrahimi's evaluation of D.S.'s Title XVI claim. *Id.* (citing 282, 295, 401-402, 451-503, 504-549, 970-1077, 1095).

While the ALJ's ultimate assessment of Dr. Miller's opinion appears to favor D.S., D.S. nonetheless argues that the ALJ's evaluation of the evidence is flawed. To the extent D.S. seems to suggest that the ALJ was required to conduct a comparative weighing of the opinions of Drs. Caruso-Rudin, Abrahimi, and Miller (*see* Dkt. No. 20 at ECF 26), she has not persuasively argued why such an analysis is required by the Commissioner's regulations. However, as above, the Court finds that the ALJ did not meaningfully engage with the opinion of Dr. Miller. Additionally, the ALJ's citation to broad sections of the record, totaling hundreds of pages, are not sufficiently specific for the court to reasonably assess the ALJ's determinations and determine whether they are supported by substantial evidence. *Cf. Molina*, 674 F.3d at 1121 ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.") (cleaned up).

### 3. Dr. Benrazavi

Soheila Benrazavi, M.D. is a consultant, who conducted an orthopedic evaluation of D.S. on March 29, 2019. *See* AR 445-449. Dr. Benravi determined that D.S. has the ability to occasionally lift and carry 50 pounds, frequently lift and carry 25 pounds, stand and walk for six

United States District Court
Northern District of California

hours in an eight-hour workday, and sit for six hours in an eight-hour workday "due to [D.S.]'s lumbosacral strain." AR 449. Dr. Benrazavi also found that D.S. is limited to occasional stooping and climbing. *Id.*

The ALJ was "not persuaded" by Dr. Benrazavi's opinion. Although the ALJ found that Dr. Benrazavi's opinion was supported by her examination of D.S., the ALJ stated that the assessed limitations were "based upon a finding of lumbosacral sprain,"[15] without any indication as to "whether such sprain was recent or how long such sprain might last, such that it cannot be determined if this sprain would satisfy the durational requirements to constitute a severe impairment, nor does the evidence establish that it is a medically determinable impairment." AR 564. Additionally, the ALJ found Dr. Benrazavi's opinion "inconsistent with the remainder of the medical evidence which does not show that the claimant was limited by a lumbar impairment prior to or during the period of Dr. Benrazavi's evaluation of the claimant." AR 564 (citing 268-444, 451-555, 1088-1128).

To the extent D.S.'s argument appears to focus on the ALJ's observations about Dr. Benrazavi's lack of durational findings, the Court is not persuaded that reversal is required on that basis. However, it is unclear what records, among the vast swath of records cited, the ALJ relied on for her findings that Dr. Benrazavi's opinion is inconsistent with "the remainder of the medical evidence" regarding D.S.'s lumbar impairment. *See* AR 564. Accordingly, clarification on remand is required.

### 4.    Drs. Kao and Rowley

Steven Kao, M.D. is a state agency consultant who conducted an initial review of D.S.'s Title II and Title XVI claims. Patty Rowley, M.D. is a state agency consultant who reviewed D.S.'s Title II and Title XVI claims on reconsideration. Both Drs. Kao and Rowley found the record evidence insufficient to assess D.S.'s physical impairments for purposes of her Title II claim. *See* AR 76, 99. With respect to her Title XVI claim, both physicians found that due to

---

[15] The Court will not belabor D.S.'s argument that Dr. Benrazavi referred to "lumbar strain," not "sprain," as D.S. acknowledges that the issue is neither "grievous" nor "dispositive." *See* Dkt. No. 20 at ECF 27.

"chronic neck and l[ower] b[ack] p[ain]," D.S. can occasionally lift and/or carry 50 pounds; can frequently lift and/or carry 25 pounds; can stand and/or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; has unlimited abilities to push and/or pull (other than as assessed regarding her ability to lift and/or carry); can occasionally climb ramps/stairs, ladders/ropes/scaffolds/, and stoop (bend); can frequently kneel, crouch (bend at the knees), and crawl; and has no manipulative, visual, communicative, or environmental limitations. *See* AR 65-66; 90-91.

With respect to D.S.'s Title II claim, the ALJ was "not persuaded" by Dr. Kao's and Dr. Rowley's determination that the evidence was insufficient to evaluate D.S.'s physical impairments.  AR 565.  The ALJ stated that "[t]hese opinions are supported by limited narratives" and are "inconsistent with the claimant's treatment for hypertension and a right ankle bone spur that were documented in the record during the Title II claim, such that they could have been evaluated, as the undersigned has done within the decision."  *Id.* (citing AR 290, 1096).

As discussed above, Judge Westmore found that the prior record required further development, and the ALJ has not fully complied with her order.  The Court agrees with D.S. that, having once again rejected all medical opinions regarding D.S.'s physical functioning, the ALJ has repeated the error (noted by Judge Westmore) of independently assessing the severity of D.S.'s impairments and her functional limitations based on the ALJ's own evaluation of the evidence.  *See* Dkt. No. 20 at ECF 16.

With respect to D.S.'s Title XVI claim, the ALJ was "not persuaded" by Dr. Kao's and Dr. Rowley's assessment of D.S.'s physical RFC.  AR 564-565.  The ALJ explained that "[s]uch opinions are supported by review of the limited records, primarily consisting of the examination of Dr. Benrazavi," and "Dr. Benrazavi's opinion is not wholly consistent with the diagnosis of lumbosacral sprain causing limitations, thereby making such opinions of limited probative value."  AR 565.  The Court agrees with D.S. that the ALJ's reasons are not supported by substantial evidence.  The record indicates that Drs. Kao and Rowley reviewed records, well beyond Dr. Benrazavi's report, from Sutter Health and Lakeside Clinic.  *See* AR 56-62, 84-87.  Additionally, Dr. Kao and Dr. Rowley both state that their assessments were based "chronic neck and l[ower]

United States District Court
Northern District of California

b[ack] p[ain]."  AR 65, 91.

## IV.    DISPOSITION

For the reasons discussed above, the Court finds that remand is appropriate for further proceedings.  *See Luther v. Berryhill*, 891 F.3d 872, 877-78 (9th Cir. 2018); 42 U.S.C. § 405(g). On remand, the ALJ must order a psychiatric consultative examination and obtain a medical opinion regarding the extent of D.S.'s pre-DLI mental impairments, as ordered by Judge Westmore.  The ALJ also must further develop the record regarding D.S.'s physical impairments prior to adjudicating her Title II and Title XVI claims, as ordered by Judge Westmore.  Following further development of the record, the ALJ must reassess D.S.'s impairments at step two of the sequential analysis, D.S.'s symptom testimony, the opinion evidence, and D.S.'s RFC.

## V.    CONCLUSION

Based on the foregoing, the Court reverses the Commissioner's decision and remands this case for further administrative proceedings consistent with this order.  The Clerk shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: September 30, 2025

Virginia K. DeMarchi
United States Magistrate Judge